# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Evan Eugene Moore,

     Petitioner

v.

Jerry Howell,[1] et al.,

     Respondents

Case No.: 2:18-cv-02345-JAD-BNW

**Order Denying Petition for Habeas Relief and Closing Case**

[ECF No. 1-1]

     Petitioner Evan Eugene Moore was found guilty of first-degree murder with a firearm and was sentenced to two consecutive terms of life with the possibility of parole after twenty years.[2]  In a six-count petition, Moore seeks a writ of habeas corpus under 28 U.S.C. § 2254 based on claims that there was insufficient evidence to support his conviction and that the state district court erred by admitting an overly suggestive photograph, erroneously providing a flight instruction, failing to advise Moore of his right to testify, and failing to relieve his counsel.[3] Having evaluated the merits of those claims, I find that habeas relief is not warranted, so I deny Moore's petition, deny him a certificate of appealability, and close this case.

---

[1] The state corrections department's inmate-locator page indicates that Moore is currently incarcerated at Nevada's Southern Desert Correctional Center.  The department's website reflects that William Hutchings is the current warden for that facility.  So I direct the Clerk of Court to substitute Moore's current physical custodian, Hutchings, for Jerry Howell, under Federal Rule of Civil Procedure 25(d).

[2] ECF No. 10-52.

[3] ECF No. 6.

**Background**

I.      **The facts underlying Moore's convictions**[4]

On the night of August 6, 2006, Kellymae Watts, Julian Robinson, Carzell Reese, and Camille Littlejohn were in a room at the Ponderosa Hotel in Reno, Nevada.  Watts had been in a relationship with Moore, but she was trying to break it off.  Watts testified that she believed Moore called the hotel room twice that evening.  When she answered the telephone the first time, Moore hung up, but during the second call, Watts believed she heard Moore laughing.  Telephone records confirmed that Moore made two telephone calls to the Ponderosa Hotel that evening.

Shortly after the calls, someone knocked on the door of the hotel room.  Watts told Robinson not to answer the door, but Robinson replied that "he wanted to deal with this and get it out of the way."  Robinson answered the door with Reese close behind him.  The individual at the door, who Reese later identified as Moore, told Robinson to "'[s]end the bitch out.'"  Robinson responded, "I'm not sending anyone out" and told Moore that if he was going to shoot, to do it.  Reese then saw Moore's "arm go up and a loud noise, and [Robinson] hit the floor."  After shooting Robinson, Moore ran down the hallway.  Robinson was shot "in front of the armpit on the left chest," and the bullet went through Robinson's lung, lacerated his aorta, and lodged in his spine.  Neither Littlejohn nor Watts saw the shooting or the events leading up to it, but they heard the knock on the door, Robinson speaking to an individual, and then a gunshot.  Watts identified Moore as the individual at the door based on his voice.

---

[4] These facts are taken from the trial transcripts.  ECF No. 10-35; ECF No. 10-41; ECF No. 10-42.  For simplicity's sake, I cite to these exhibits generally for this entire fact section.  I make no credibility or factual findings regarding the truth or falsity of this summary of the evidence from the state court.  This summary is merely a backdrop to my consideration of the issues.

A week after the shooting, Moore told Detective David Fogarty of the Reno Police Department that he was in California at the time of the shooting.  However, during a police interview a week later, Moore admitted he was at the Ponderosa Hotel on the evening of the shooting, but he denied shooting Robinson.  A month and a half after his police interview, Moore wrote a letter to Diane Taylor, who lived in California, saying, in relevant part, "Diane, I may need your help. You may have to tell them that I was there with you and that you came to pick me up on Saturday night."  In April and October 2007, Watts visited Moore in jail.  During those visits, Moore suggested that Watts lie about hearing his voice on the telephone prior to the shooting.  Moore also told Watts he could provide her money or a place to stay.

## II.    Procedural history

A jury found Moore guilty of first-degree murder with a firearm.[5]  Moore appealed, and the Nevada Supreme Court affirmed his conviction.[6]  Moore filed a state habeas petition, which the state district court denied after an evidentiary hearing.[7]  Moore appealed, and the Nevada Court of Appeals affirmed.[8]  Moore filed his pro se federal habeas petition.[9]  The respondents moved to dismiss, and I granted the motion, in part, determining that ground 7 and part of ground 1 were unexhausted and dismissing ground 2 as non-cognizable.[10]  Moore moved to abandon his

---

[5] ECF No. 10-47.

[6] ECF No. 11-1.

[7] ECF No. 11-10; ECF No. 11-58; ECF No. 11-61.

[8] ECF No. 11-81.

[9] ECF No. 6.

[10] ECF No. 9; ECF No. 22.

3

unexhausted grounds, and I granted the request.[11]  The respondents answered the petition, and Moore replied.[12]

### Discussion

**I.      Legal standards**

    **A.      Review under the Antiterrorism and Effective Death Penalty Act (AEDPA)**

      If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[13]  A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[14]  And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[15]  Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure

---

[11] ECF No. 23; ECF No. 24.

[12] ECF No. 25; ECF No. 26.

[13] 28 U.S.C. § 2254(d).

[14] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[15] *White v. Woodall*, 572 U.S. 415, 424–27 (2014).

1  to do so as error."[16]  The "objectively unreasonable" standard is difficult to satisfy;[17] "even

2  'clear error' will not suffice."[18]

3          Habeas relief may only be granted if "there is no possibility [that] fairminded jurists

4  could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[19]

5  As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision

6  "was so lacking in justification that there was an error well understood and comprehended in

7  existing law beyond any possibility of fairminded disagreement."[20]  "[S]o long as 'fairminded

8  jurists could disagree' on the correctness of the state court's decision," habeas relief under

9  Section 2254(d) is precluded.[21]  AEDPA "thus imposes a 'highly deferential standard for

10 evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of

11 the doubt.'"[22]  If a federal district court finds that the state court committed an error under

12 § 2254, the district court must then review the claim de novo.[23]  The petitioner bears the burden

13

14

15

---

16 [16] *Id.* at 1705–06 (emphasis in original).

17 [17] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

18 [18] *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted); *see also*
   *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court
   believes the state court's determination was incorrect but whether that determination was
19 unreasonable—a substantially higher threshold.").

20 [19] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

   [20] *Id.* at 103.
21
   [21] *Id.* at 101.

22 [22] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

23 [23] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we
   may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error,
   we must decide the habeas petition by considering de novo the constitutional issues raised.").

of proving by a preponderance of the evidence that he is entitled to habeas relief,[24] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[25]

## B.     Standard for federal habeas review of an ineffective-assistance claim

The right to counsel embodied in the Sixth Amendment provides "the right to the effective assistance of counsel."[26]  Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance[.]'"[27]  In *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that: (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[28] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[29]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome."[30]  Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct in order to avoid the distorting effects of hindsight.[31]  "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practice or

---

[24] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[25] 28 U.S.C. § 2254(e)(1).

[26] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[27] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[28] *Strickland*, 466 U.S. at 690.

[29] *Id.* at 694.

[30] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

[31] *Strickland*, 466 U.S. at 689.

6

most common custom."[32]  The burden is on the petitioner to overcome the presumption that

counsel made sound trial-strategy decisions.[33]  The United States Supreme Court has described

federal review of a state supreme court's decision on an ineffective-assistance claim as "doubly

deferential,"[34] as the court must "take a 'highly deferential' look at counsel's performance . . .

through the 'deferential lens of § 2254(d)'"[35] and consider only the record that was before the

state court that adjudicated the claim on its merits.[36]

### C.  Standard for federal habeas review of an insufficiency-of-the-evidence claim

"[T]he Due Process Clause protects the accused against conviction except upon proof

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

charged."[37]  A federal habeas petitioner "faces a heavy burden when challenging the sufficiency

of the evidence used to obtain a state conviction on federal due process grounds."[38]  On direct

review of a sufficiency-of-the-evidence claim, a state court must determine whether "any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[39]

The evidence is to be viewed "in the light most favorable to the prosecution."[40]  Federal habeas

---

[32] *Harrington*, 562 U.S. at 104.

[33] *Id.*

[34] *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

[35] *Id.*

[36] *Id.* at 181–84.

[37] *In re Winship*, 397 U.S. 358, 364 (1970).

[38] *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

[39] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[40] *See id.*

relief is available only if the state-court determination that the evidence was sufficient to support a conviction was an "objectively unreasonable" application of *Jackson*.[41]

## II.   Evaluating Moore's claims

In ground 1 of his petition, Moore claims that his counsel failed to regularly communicate with or visit him prior to trial.  In grounds 3 through 6, Moore claims that the state district court erred in admitting an overly suggestive photograph, providing a flight instruction, failing to advise him about his right to testify, and failing to relieve his counsel.  Finally, in ground 8, Moore claims there was insufficient evidence to support his conviction.

### A.   Ground 1—ineffective assistance of counsel

In the portion of ground 1 that remains, Moore alleges that his Sixth Amendment right to the effective assistance of counsel was violated because his counsel failed to regularly communicate with or visit him prior to trial and was unable "to give [his] case the attention needed."[42]

#### 1.   Factual background

On September 7, 2007, a few months prior to the scheduled trial date, Moore moved to relieve his counsel, explaining that his counsel "failed to respond to requests for information although numerous telephonic and written attempts ha[d] been made to contact [her] and acquire said information."[43]  The state district court denied the request without a hearing "[i]n light of th[e] rapidly approaching trial date" and Moore's "fail[ure] to make the requisite showing of good cause . . . to permit withdrawal of his attorney."[44]  Several months later, the state district

---

[41] *See Juan H.*, 408 F.3d at 1275 n.13.

[42] ECF No. 6 at 3.

[43] ECF No. 10-27 at 2.

[44] ECF No. 10-28 at 2–3.

court held a hearing to confirm Moore's trial date.[45]  At that hearing, Moore's counsel "ask[ed]

the Court to relieve [her] further of representation of" Moore, citing ethical reasons.[46]  Moore

responded, in part, that he had "called [his counsel's] office [numerous times] to ask to speak to

her, [he] asked to see her, and [he had not received a] response."[47]  The state district court

requested that Moore's counsel file a written request to be relieved.[48]

Moore's counsel filed a motion to withdraw the next day.[49]  In it, she explained that she

"forwarded all calls, including all jail calls, directly to her cell phone and answer[ed] all calls."[50]

While counsel had "not been physically able to make the numerous jail visits requested by

[Moore], counsel's investigator, Kenneth Peele, ha[d] made those visits each and every time such

were requested by" Moore.[51]  Regarding her previous mention of ethical concerns, counsel

explained that there was an alibi-witness conflict.[52]  In sum, counsel explained that she and

Moore had "reached a point where there [were] irreconcilable differences and there exist[ed] a

legal and ethical conflict in further representation."[53]  In responding to counsel's motion, the

state explained, in part, that "defense counsel sent the prosecutor an e-mail which include[d] the

following pertinent language: '[the Defendant] will not even speak to me at this point.'"[54]

---

[45] ECF No. 10-30.

[46] *Id.* at 4–5.

[47] *Id.* at 8.

[48] *Id.* at 9.

[49] ECF No. 19-1.

[50] *Id.* at 4.

[51] *Id.* at 4–5.

[52] *Id.* at 5.

[53] *Id.* at 5–6.

[54] ECF No. 10-31 at 4 (second alteration in original).

A hearing was held on counsel's motion.[55]  Counsel explained that she did "not feel that [she could] effectively represent [Moore], given what ha[d] transpired most recently with the State Bar complaint that he has filed."[56]  Counsel elaborated that it had "been [her] position that once a Bar complaint is filed and once the attorney-client relationship has gotten this bad, that trying to effectively represent a client, especially when he's facing life in prison . . . presents a problem."[57]  The state district court then held an in-camera hearing outside the presence of the prosecutor.[58]  Counsel's investigator, Peele, testified that he was originally able to communicate with Moore, but that had "recently" changed.[59]  Counsel explained that Moore had "chosen to basically stop communicating," that her relationship with Moore had "severely deteriorated," that she did not "see how [she could] help" Moore, that she did not feel that she "would be effective in trial next week with Mr. Moore," and that the bar complaint was "in the forefront of [her] mind."[60]

Regarding the ethical-conflict issue, counsel explained that she "learned recently there was a letter intercepted from Mr. Moore to this potential witness, and the State's reading of it is that it was him asking this person to lie."[61]  Counsel stated that she could not "pursue or present testimony that [she] know[s] to be perjured."[62]  Peele explained that he contacted the alibi witness, Taylor, and "she indicated that Mr. Moore was with her in California at the time of this

---

[55] ECF No. 10-32.

[56] *Id.* at 6.

[57] *Id.* at 7.

[58] *See* ECF No. 19-2.

[59] *Id.* at 7–8.

[60] *Id.* at 11–12, 18.

[61] *Id.* at 13.

[62] *Id.*

crime."[63]   Peele told Taylor that she would likely need to be a witness in this case, but when

Peele followed up with Taylor later, she indicated that she could not miss work to testify.[64]

Taylor then stopped answering Peele's telephone calls.[65]   When Peele relayed this information to

Moore, Moore "said, well, somehow I've got to get her to let her know that all she's got to do is

come forth and tell the truth."[66]   The state district court reviewed Moore's letter to Taylor and

concluded, "in light of what Mr. Peele says, it's certainly not clear to me that the testimony that

would be offered by this witness would be false or perjured testimony."[67]   The state district court

explained that it did not "see . . . any ethical bar or prohibition that would keep [counsel] from

presenting the alibi evidence."[68]

        The state district court questioned Moore about his relationship with counsel.   Moore

explained that "[e]very time [he] tried to contact her, [he did not] want to talk to Mr. Peele, [he]

want[ed] to talk to [his counsel] about [his] case."[69]   However, Moore also stated that he did not

"have a problem with [his counsel] representing [him]" and that he would communicate with her

going forward.[70]   The state district court told Moore his counsel was "a good lawyer, and she'll

do her job."[71]   And Moore responded, "I think she is."[72]   The state district court then told Moore

---

[63] *Id.* at 15.

[64] *Id.* at 15–16.

[65] *Id.* at 16.

[66] *Id.*

[67] *Id.* at 17.

[68] *Id.* at 20.

[69] *Id.* at 21.

[70] *Id.* at 22.

[71] *Id.*

[72] *Id.*

it had "known [Moore's counsel] for years and years and years and years, and [had] every faith and . . . believe[d] with all [its] heart that she [would] do everything she need[ed] to do to give [Moore] the best representation."[73]   The state district court denied counsel's motion to withdraw.[74]

A postconviction evidentiary hearing was held on Moore's state habeas petition.[75]   At that hearing, Moore testified that he only met with his counsel once prior to trial—the day before it—and they discussed nothing substantial during that thirty-minute meeting.[76]   Moore tried to contact his counsel by telephone "[a]t least over 20" times prior to trial, but he was never able to get through to her.[77]   Instead, Moore spoke with Peele "[a]bout 15" times.[78]   However, Peele would not speak to Moore about the facts of the case, informing him that he "had to speak to [his] attorney about that."[79]   Moore testified that there were many things he wanted to discuss with his counsel had he been given the chance, including: his letter to Taylor, testifying at trial, his alibi defense that was in California with Taylor the night of the shooting, that he lied to Detective Fogarty about being at the Ponderosa Hotel the night of the shooting because he did not want to get Taylor in trouble, that he called the Ponderosa Hotel the night of the shooting to contact clients to sell them drugs, and that he had never met Robinson or Reese.[80]

---

[73] *Id.* at 23.

[74] ECF No. 10-32 at 10.

[75] ECF No. 11-58.

[76] *Id.* at 8–9.

[77] *Id.* at 9.

[78] *Id.* at 10.

[79] *Id.* at 11.

[80] *Id.* at 10–11, 13, 16–17.

Counsel testified at the postconviction evidentiary hearing that she did not recall how many times she spoke with Moore about his case or how many times she visited him in jail.[81] Although counsel had no specific recollection, she was "sure [she] talked to" Moore because she "wouldn't go to trial with a client [she] never met."[82]   Jail records confirmed that counsel visited Moore at the jail at least twice prior to trial.[83]   Counsel had no recollection of a conversation with Moore regarding his right to testify, but she was confident it occurred.[84]   The state district court determined that Moore's testimony at the postconviction evidentiary hearing was not credible, but that counsel's testimony was.[85]

### 2.    *State-court determination*

In affirming the denial of Moore's state habeas petition, the Nevada Court of Appeals held that the district court's decision was supported by substantial evidence:

> Moore argues the district court erred by denying his ineffective-assistance-of-counsel claims.   To prove ineffective assistance of counsel, a petitioner must demonstrate counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 688, 687–88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432–33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*).   Both components of the inquiry must be shown, *Strickland*, 466 U.S. at 697, and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004).   We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

---

[81] *Id.* at 25.

[82] *Id.* at 26–28, 30, 32.

[83] *Id.* at 37.

[84] *Id.* at 34–35.

[85] ECF No. 11-61 at 4.

First, Moore claimed counsel was ineffective for failing to visit him while he was in jail awaiting trial or otherwise communicating with him prior to trial. He claimed counsel only visited him once in jail while awaiting trial and, therefore, he was unable to talk to her about his alibi witness. At the evidentiary hearing, Moore was adamant counsel only visited him once but admitted her investigator visited over 15 times. Counsel testified she could not remember how many times she visited Moore prior to trial but she would never go to trial on a murder case without meeting with a client several times. Further, Moore entered records from the jail showing counsel visited him at least twice.

The district court found Moore failed to demonstrate counsel was deficient. Specifically, the district court found Moore's testimony incredible and found counsel credible. Substantial evidence supports the district court's decision, and we conclude the district court did not err by denying this claim.[86]

### 3.    *Analysis*

Defense counsel has a duty to "consult with the defendant on important decisions and to keep the defendant informed of important developments."[87] As the Nevada Court of Appeals reasonably determined, Moore's counsel met these consultation duties because she was credible in her post-conviction evidentiary hearing testimony when she said that she met Moore on more than one occasion and always visited clients before defending them in a murder trial. I'm unable to supplant this credibility determination.[88] Moreover, Moore's counsel sent her investigator to visit Moore on many occasions, and it appears that Moore at least partially hindered his counsel's ability to communicate with him, refusing to speak with her as the trial approached. Therefore, on this record, the Nevada Court of Appeals' determination that Moore failed to demonstrate that his counsel's representation was deficient constitutes an objectively reasonable

---

[86] ECF No. 11-81 at 2–3.

[87] *Strickland*, 466 U.S. at 688.

[88] *See Rice v. Collins*, 546 U.S. 333, 341–42 (2006) ("Reasonable minds reviewing the record might disagree about [an individual]'s credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

application of *Strickland*'s performance prong.[89]  The Nevada Court of Appeals' rejection of Moore's claim was thus neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court nor based on an unreasonable determination of the facts.  Moore is not entitled to federal habeas for ground 1.

### B.    Ground 3—due process (identification)

In ground 3, Moore alleges that his Fourteenth Amendment right to due process was violated when the state district court erroneously admitted Reese's identification of him from a single, overly suggestive photograph.[90]  Moore contends that this improper identification then tainted Reese's in-court identification of him.[91]

### 1.    *Factual background*

Reese testified that he saw Moore for a "[c]ouple minutes" on two occasions prior to the shooting.[92]  On the evening of the shooting, when Robinson opened the door, Reese was behind Robinson, but he was "[s]lightly to the left so [he] could see the opening of the door."[93]  Reese explained that he was "able to get a clear look at the shooter's face."[94]  Reese saw Moore with "had his hands in his jacket" and his left arm inside a black leather "purse or pouch."[95]  Reese said Moore was wearing "dark-colored clothes" and long pants.[96]

---

[89] *Strickland*, 466 U.S. at 688.

[90] ECF No. 6 at 10.

[91] ECF No. 26 at 9.

[92] ECF No. 10-41 at 10.

[93] *Id.* at 11.

[94] *Id.* at 46.

[95] *Id.* at 13–15.

[96] *Id.* at 25.

Detective Fogarty showed Reese a photograph of Moore two days after the shooting "[j]ust to confirm the identity of the person he identified."[97]  Reese "immediately" recognized the individual in the photograph as the person he knew as Moore, based on having seen him on two prior occasions and at the shooting.[98]  Reese was "positive the man [he] saw" commit the shooting was Moore.[99]  Detective Fogarty testified that Reese expressed no hesitation in identifying Moore as the shooter.[100]

## 2.    State-court determination

In affirming Moore's judgment of conviction, the Nevada Supreme Court held that Moore did not meet his burden and that his argument was meritless:

> Moore contends that the district court erred in admitting Carzelle Reese's identification of him from an overly suggestive photograph and not a proper lineup. However, at trial, the defense did not object to Reese's identification.
>
> In challenging Reese's identification, we conclude that Moore failed to demonstrate how the alleged error affected his substantial rights by causing actual prejudice or a miscarriage of justice.
>
> The standard for reviewing an out-of-court identification is whether, upon review "of the totality of the circumstances, the identification was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law." *Bolin v. State*, 114 Nev. 503, 522, 960 P.2d 784, 796 (1998) (*abrogated by Richmond v. State*, 118 Nev. 924, 934, 59 P.3d 1249, 1256 (2002)).  "[T]he key question is whether the identification was reliable." *Gehrke v. State*, 96 Nev. 581, 584, 613 P.2d 1028, 1030 (1980).  Specifically, this court considers five factors: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and confrontation.  *See id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)).

---

[97] *Id.* at 11–12, 197.

[98] *Id.* at 12.

[99] *Id.* at 46.

[100] *Id.* at 198.

During the shooting, Reese was standing just behind Robinson and had the opportunity to view the shooter for the entire duration of the incident. Also, when shown the picture of Moore just two days after the shooting, Reese testified that he immediately recognized Moore from the two prior encounters and from the night of the shooting. Accordingly, we conclude that Reese's identification was highly reliable despite only being shown one photo and thus did not violate Moore's due process rights. Thus, we conclude that Moore's argument is without merit.[101]

### 3. Analysis

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."[102] Because Reese identified Moore as the shooter prior to his identification of Moore from the single photograph such that the photo was used only to confirm Reese's identification of Moore, it is not readily apparent that the identification procedure was suggestive in the first instance.[103]

Even if the identification procedure was suggestive, "reliability is the linchpin in determining the admissibility of identification testimony."[104] The factors to be considered in making that reliability determination are "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation."[105] As the Nevada Supreme Court reasonably concluded, the record

---

[101] ECF No. 11-1 at 10–11.

[102] *Simmons v. United States*, 390 U.S. 377, 384 (1968).

[103] *See, e.g.*, *Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012) ("The Court [has] emphasized [in prior cases], first, that due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary.").

[104] *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

[105] *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)).

weighs strongly in favor of reliability of the identification evidence: Reese, having seen Moore on two prior occasions, was familiar with Moore's appearance and got a clear look at Moore's face when Robinson opened the hotel room door.  Further, Reese was present during the shooting, identified Moore as the shooter when he spoke with police, identified Moore in a photograph without hesitation two days after the shooting, and was able to describe Moore's attire and belongings from the evening of the shooting.  So the Nevada Supreme Court's rejection of Moore's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.  Moore is not entitled to federal habeas for ground 3.

## C.    Ground 4—due process (flight instruction)

In ground 4, Moore alleges that his right to due process was violated when the state district court erroneously gave a flight instruction.[106]  Moore contends that the facts of the case did not support the instruction because he returned Detective Fogarty's telephone call, voluntarily attended the police interview, and turned himself in to police after learning about his arrest warrant.[107]

### 1.    *Background*

During its discussion about jury instructions, the state district court noted that the flight instruction was one "over which there was a discussion in chambers as to whether an objection would be lodged."[108]  In response, Moore's counsel explained, "knowing the evidence that's been presented, for strategic reasons, the State and the defense both want this instruction in."[109]

---

[106] ECF No. 6 at 12.

[107] *Id.* at 12–13.

[108] ECF No. 10-42 at 47.

[109] *Id.*

The state district court stated that "the State's reason, of course, [for wanting the flight instruction included was] to [argue to] the jury [why] the defendant left the area," while the defense "perhaps [wanted] to point the finger at other individuals who were in the vicinity."[110] Moore's counsel agreed that was accurate.[111]   The state district court gave the following flight instruction to the jury:

> The flight of a person immediately after the commission of a crime is not sufficient in itself to establish his guilt, but is a fact which tends to show a consciousness of guilt, if proved, and may be considered by you in the light of all other proved facts in deciding the question of his or her guilt or innocence.  The weight to which such circumstance is entitled is a matter for the jury to determine.[112]

### *2.* *State-court determination*

In affirming Moore's judgment of conviction, the Nevada Supreme Court held that the flight instruction was proper:

> Moore argues that even though his counsel did not object, the district court improperly instructed the jury on flight for the limited purpose of showing consciousness of guilt.  Moore contends that the instruction was misleading because Moore cooperated with the police.
>
> We conclude that the flight instruction was proper as there was sufficient evidence that Moore fled the scene.  *See Carter v. State*, 121 Nev. 759, 770, 121 P.3d 592, 599 (2005).  In this case, Moore admits to running from the scene of the crime, fleeing to California, and initially lying to the police about being at the scene.  While Moore willingly returned the police's phone call and returned to Reno for questioning, the jury could reasonably infer that he had fled the apartment complex because of consciousness of guilt.  Accordingly, we conclude that no error occurred.[113]

---

[110] *Id.* at 48.

[111] *Id.*  During closing arguments, Moore's counsel argued that the jury should apply the flight instruction to Reese's "actions and behaviors."  ECF No. 10-42 at 82.  Moore's counsel elaborated that Reese's "actions are those of a guilty man and can be argued that he is fleeing for that very reason.  He has something to hide.  He needs time to get his story straight."  *Id.*

[112] ECF No. 10-43 at 34.

[113] ECF No. 11-1 at 10.

The Nevada Court of Appeals' decision is based on an unreasonable determination of the facts. Moore did not admit to running from the scene of the crime, fleeing to California, or initially lying to the police about being at the scene. Rather, Moore initially told Detective Fogarty that he was in California at the time of the shooting but later admitted he was at the Ponderosa Hotel that night. Importantly, however, Moore denied shooting Robinson, so the Nevada Court of Appeals' statement that Moore admitted running from the scene and admitted fleeing to California is erroneous. And Moore did not lie about being at the scene—he lied about not being at the scene. Further, the Nevada Court of Appeals stated that the jury could reasonably infer that Moore fled the apartment complex, but the shooting happened at a hotel—not an apartment complex. Therefore, because the Nevada Court of Appeals' decision was based on an unreasonable determination of the facts, I review this claim de novo.[114]

### 3. *Analysis*

Issues relating to jury instructions are not cognizable in federal habeas corpus unless they violate due process.[115] The question is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process', . . . not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'"[116] And significantly,

---

[114] *See Panetti v. Quarterman*, 551 U.S. 930, 948 (2007) ("As a result of [the state court's] error, our review of petitioner's underlying . . . claim is unencumbered by the deference AEDPA normally requires"); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that . . . the state court's decision was based on an unreasonable determination of the facts, we evaluate the claim de novo.").

[115] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *see also Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("[W]e have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error.").

[116] *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973)).

20

when reviewing a jury instruction, the court must consider the jury instruction in issue "in the context of the instructions as a whole and the trial record."[117]

Moore fails to demonstrate that the flight instruction violated due process.[118]  Reviewing the flight instruction in the context of the trial record, the facts of the case warranted the giving of the instruction.  Reese testified that Moore shot Robinson and then immediately ran down the hallway.  And Detective Fogarty testified that Moore was in California when he spoke with him on the telephone a week after the shooting.  Moreover, Moore's counsel requested the flight instruction so the defense could implicate Reese, who fled the hotel room shortly after the shooting.  Accordingly, the flight instruction was sound and did not "infect[ ] the entire trial [such] that [Moore's] resulting conviction violates due process."[119]  So Moore is not entitled to federal habeas relief for ground 4.

### D.    Ground 5—right to testify

In ground 5, Moore alleges that the state district court violated his Fifth Amendment right to testify by failing to advise him of that right.[120]  It is true that the state district court did not advise Moore about his right to testify.[121]  Moore's counsel did, however, inform the state district court, in Moore's presence, that "[t]here will need to be an instruction offered with

---

[117] *Estelle*, 502 U.S. at 72; *see also United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999) ("In reviewing jury instructions, the relevant inquiry is whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation.").

[118] *Estelle*, 502 U.S. at 72.

[119] *Cupp*, 414 U.S. at 147.

[120] ECF No. 6 at 15.

[121] *See* ECF No. 10-42 at 31–32.

respect to [Moore] having the right not to testify [and] there's nothing to be inferred by him exercising that right."[122]

### 1.    *State-court determination*

In affirming Moore's judgment of conviction, the Nevada Supreme Court held that the district court did not commit error by failing to advise Moore about his right to testify:

> Moore argues that the district court violated his Fifth Amendment rights in failing to advise him of his right to testify on his own behalf when he was the only person who could present his theory of the case and his counsel failed to call any witnesses. As such, Moore contends that *Phillips v. State*, 105 Nev. 631, 633, 782 P.2d 381, 382 (1989), is distinguishable on its facts.
>
> In *Phillips*, we considered and rejected a rule requiring reversal of a criminal conviction if the district court failed to expressly admonish a defendant on the record regarding his right to testify.  105 Nev. at 633, 782 P.2d at 382.  We concluded that due to the importance of the right to testify, it is "good practice" that "every defendant should be advised on the record, but outside the presence of the jury, by the [district] court of his right to testify at or near the end of the State's case-in-chief." *Id.* at 633, 782 P.2d at 382.  However, we also concluded that failure to advise the defendant of his right to testify on the record is not absolute proof that a defendant did not voluntarily waive his right to testify.  *Id.*
>
> We conclude that the language in *Phillips* that every defendant should be advised on the record is a recommendation from this court, not a mandatory requirement. We thus conclude that here, like in *Phillips*, the record does not reflect that Moore was unaware of his right to testify or that he felt that he would not be allowed to testify if he so chose.  *Id.*  Therefore, we conclude that the district court did not err in failing to advise Moore about his right to testify.[123]

### 2.    *Analysis*

The United States Supreme Court has made it clear that a criminal defendant enjoys a constitutional right to testify on his or her own behalf: "[a]t this point in the development of our adversary system, it cannot be doubted that a defendant in a criminal case has the right to take

---

[122] *Id.* at 32.

[123] ECF No. 11-1 at 8–9.

the witness stand and to testify in his or her own defense."[124]  And this decision of whether to testify on his own behalf is one "the accused has the ultimate authority to make."[125]

Moore contends that the state district court was required to "engage in an on the record discussion with [him] to ensure that he ha[d] knowingly waived his right to testify."[126]  It is true that the United States Supreme Court has instructed that "[t]he determination of whether there has been an intelligent waiver of right *to counsel* must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."[127]  However, the United States Supreme Court has not particularly applied this contextual analysis to a waiver of the right to testify, and where no decision of the Supreme Court squarely addresses an issue in a habeas case, "it cannot be said that the state court unreasonabl[y] appli[ed] clearly established federal law" warranting habeas relief under 28 U.S.C. § 2254.[128]  And even looking to circuit precedent for guidance on the issue, Moore's claim is foreclosed.  The Ninth Circuit has stated that "[t]he trial court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred."[129]  Thus, the Nevada Supreme Court's denial of Moore's claim regarding the state district court's failure to advise him of his right to testify was neither contrary to, nor an

---

[124] *Rock v. Arkansas*, 483 U.S. 44, 49 (1987).

[125] *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

[126] ECF No. 26 at 18 (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).

[127] *Johnson*, 304 U.S. at 464 (emphasis added).

[128] *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (internal quotation marks omitted) (alterations in original).

[129] *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) (internal quotation marks omitted) (explaining that "waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so").

unreasonable application of, clearly established federal law.  So Moore is not entitled to federal habeas relief for ground 5.

### E.    Ground 6—right to counsel

In ground 6, Moore alleges the state district court violated his Sixth Amendment right to counsel by denying his request to relieve his counsel based on his irreconcilable conflict with her and based on his counsel's conflict of interest.[130]  I incorporate the background facts, except for the facts from the post-conviction evidentiary hearing,[131] from ground 1 here.

#### 1.    State-court determination

In affirming Moore's judgment of conviction, the Nevada Supreme Court found no error:

> Moore contends that in denying his requests to have his attorney removed from his case, the district court erred in failing to hold an evidentiary hearing to inquire into his grounds for the requests.  *See Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004).

> *Standard of review*

> We review a district court's denial of a motion to substitute counsel for an abuse of discretion.  *Garcia v. State*, 121 Nev. 327, 337, 113 P.3d 836, 843 (2005).  Where a defendant moves for new counsel considerably in advance of trial, "'the [district] court may not summarily deny the motion but must adequately inquire into the defendant's grounds for it.'"  *Id.* at 337, 113 P.3d at 842 (alteration in original) (quoting *Young*, 120 Nev. at 968, 102 P.3d at 576).

> When we review a denial of a motion to substitute counsel, we consider the following three factors: "(1) the extent of the conflict between the defendant and his or her counsel, (2) the timeliness of the motion and the extent to which it will result in inconvenience or delay, and (3) the adequacy of the court's inquiry into the defendant's complaints."  *Id.* at 337, 113 P.3d at 842–43.  Generally, a district court's inquiry into a motion for replacement counsel should balance potential procedural delay against the extent of attorney-client conflict.  *See Young*, 120 Nev. at 971, 102 P.3d at 577.  This does not require, however, that the district court hold hearings on such motions or explicitly balance the required considerations.  *See Garcia*, 121 Nev. at 339, 113 P.3d at 844.

---

[130] ECF No. 6 at 18–19; ECF No. 26 at 23.

[131] This court is limited on habeas review "to the record that was before the state court that adjudicated the claim on the merits."  *Pinholster*, 563 U.S. at 181.

*The district court did not abuse its discretion*

Here, the district court filed an order denying Moore's request because the trial was rapidly approaching and Moore failed to make the requisite showing of good cause under Washoe District Court Rule 23(4). After analyzing the three *Garcia* factors, we conclude that the district court was correct in denying Moore's motion to substitute counsel. While Moore did file two motions, they both were procedurally deficient as they lacked service of process and the second motion was not timely because it would have caused a delay in the trial.

More importantly, the district court held a hearing regarding Moore's attorney's motion to withdraw in which the issues raised by Moore and the ultimate delay that would result from the appointment of new counsel were discussed. After the discussion, the breakdown between Moore and his attorney appeared to be resolved and Moore explicitly stated that he no longer had a problem with his counsel's continued representation of him. Therefore, we conclude that the district court did not abuse its discretion when it denied Moore's motion because it properly considered the extent of the attorney-client conflict and determined that conflict did not justify replacement of counsel.[132]

### 2.    Analysis

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defense."[133] However, the Sixth Amendment does not "guarantee[ ] a 'meaningful relationship' between an accused and his [or her] counsel."[134] Certainly, there was a breakdown in Moore's relationship with his counsel prior to the state district court's in-camera hearing on Moore's counsel's motion to withdraw.[135] Indeed, Moore's counsel stated that she and Moore had "irreconcilable differences," that their

---

[132] ECF No. 11-1 at 5–7 (internal footnote omitted).

[133] U.S. Const. amend. VI.

[134] *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

[135] *See United States v. Moore*, 159 F.3d 1154, 1158–59 (1998) (fashioning a three-part test to determine whether a conflict rises to the level of being irreconcilable: "(1) the extent of the conflict; (2) the adequacy of the inquiry [by the state district court]; and (3) the timeliness of the motion").

relationship had "severely deteriorated," and that Moore would not speak to her.[136]  But, as the Nevada Supreme Court reasonably noted, it appears that breakdown had been at least partially resolved during the in-camera hearing.  At that time, approximately a month and a half before his trial began, Moore explained that he did not have an issue with his counsel continuing to represent him, and he agreed to communicate with her going forward.[137]  And the state district court held a thorough in-camera hearing on the issue of Moore and his counsel's relationship.[138]

But the Ninth Circuit has determined that "[e]ven if [a petitioner] were successfully able to demonstrate a complete breakdown in communication or prove that an irreconcilable conflict existed . . . , [a] irreconcilable-conflict claim would still fail" because the Supreme Court "has never held that an irreconcilable conflict with one's attorney constitutes a per se denial of the right to effective counsel."[139]  So the Nevada Supreme Court's denial of Moore's claim regarding the conflict with his counsel was neither contrary to, nor an unreasonable application of, clearly established federal law.

Turning to Moore's conflict-of-interest claim, "[i]n order to demonstrate a violation of his Sixth Amendment rights," Moore "must establish that an actual conflict of interest adversely affected his lawyer's performance."[140]  It is insufficient to show a mere possibility of a conflict.[141]  Counsel's alleged conflict of interest stemmed from Moore's letter to Taylor in

---

[136] ECF No. 19-1 at 5–6; ECF No. 19-2 at 11–12, 18; ECF No. 10-31 at 4.

[137] ECF No. 19-2 at 22.

[138] *See generally* ECF No. 19-2.

[139] *Carter v. Davis*, 946 F.3d 489, 508 (9th Cir. 2019) (explaining that "AEDPA conditions habeas relief on a determination that the state-court decision unreasonably applied 'clearly established Federal law' as pronounced by the U.S. Supreme Court" (citing 28 U.S.C. § 2254(d)(1))).

[140] *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

[141] *Id.*; *see also Mickens v. Taylor*, 535 U.S. 162, 172–74 (2002).

which he told Taylor that she "may have to tell them that [he] was there with [her] and that [she] came to pick [him] up on Saturday night."[142]  As the state district court reasonably noted, based on Peele's statements at the in-camera hearing, it is not clear that Moore was asking Taylor to provide false testimony.  Rather, written after Taylor stopped responding to Peele, Moore's letter could be simply read as a plea for Taylor to testify about her original statement to Peele that she was with Moore the night of the shooting.  Moore has therefore not established "an actual conflict of interest,"[143] so the Nevada Supreme Court's denial of his conflict-of-interest claim was neither contrary to, nor an unreasonable application of, clearly established federal law or based on an unreasonable determination of the facts.  Moore is not entitled to federal habeas relief for ground 6.

## F.  Ground 8—due process (insufficient evidence)

In ground 8, Moore alleges that his Fourteenth Amendment right to due process was violated because there was insufficient evidence to support his conviction.[144]

### 1.  State-court determination

In affirming Moore's judgment of conviction, the Nevada Supreme Court found sufficient evidence to support it:

> Moore argues that the prosecution failed to present sufficient evidence to sustain his first-degree murder conviction and, as such, the district court erred in giving a first-degree murder instruction to the jury.  We disagree.
>
> *Standard of review*
>
> The Due Process Clause of the Fourteenth Amendment requires that to convict a defendant of a crime, all elements of that crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 364 (1970).  In reviewing a claim of

---

[142] ECF No. 10-42 at 12.

[143] *Cuyler*, 446 U.S. at 350.

[144] ECF No. 6 at 25.

insufficient evidence, "[t]he relevant inquiry is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt.'" *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998) (quoting *Koza v. State*, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984)).

### *Sufficient evidence was presented*

We conclude that there was sufficient evidence presented to the jury to support Moore's conviction of first-degree murder. The State presented evidence that Moore made phone calls to the room before the murder, that he was present at the scene, that he lied about his presence, that he was the shooter, that he fled from the scene, and that he attempted to obtain an alibi while in prison. Under these circumstances, a rational trier of fact could have reasoned from the evidence presented that all the elements of first-degree murder were proved beyond a reasonable doubt. Therefore, we affirm Moore's conviction and conclude that the district court did not err in giving the first-degree murder jury instruction.[145]

### 2. **Conclusion**

Sufficiency-of-the-evidence claims are assessed by the elements of a crime as defined by state law.[146] Nevada law defines murder as "the unlawful killing of a human being . . . [w]ith malice aforethought, either express or implied."[147] And, as it relates to the facts of this case, first-degree murder is murder that is "willful, deliberate and premeditated."[148] Willfulness is defined as "the intent to kill."[149] Deliberation is defined as "the process of determining upon a course of action to kill as a result of thought, including weighing the reasons for and against the

---

[145] ECF No. 11-1 at 11–12.

[146] *Jackson*, 443 U.S. at 324 n.16.

[147] Nev. Rev. Stat. § 200.010(1).

[148] Nev. Rev. Stat. § 200.030(1)(a).

[149] *Byford v. State*, 994 P.2d 700, 714 (2000).

action and considering the consequences of the action."[150]  And premeditation is defined as "a design, a determination to kill, distinctly formed in the mind by the time of the killing."[151]

Moore argues that eyewitness Reese "was behind [Robinson] at the time of the shooting, all relevant persons were high on drugs at the time [of the shooting], [and] the gun was never found for ballistic proof."[152]  Moore also contends that "there was nothing to show that [he] premeditated the shooting."[153]  However, when viewed "in the light most favorable to the prosecution,"[154] the evidence shows that Moore called the Ponderosa Hotel where his former girlfriend was staying, went to the hotel room with a gun, shot Robinson when he refused to send his former girlfriend out, ran from the hotel room following the shooting, went to California, wrote a letter to a woman implicitly asking her to be his alibi witness, and asked his former girlfriend to lie about hearing his voice on the telephone prior to the shooting.[155]  Thus, the Nevada Supreme Court reasonably determined that a rational trier of fact could have found beyond a reasonable doubt that Moore committed first-degree murder with the use of a firearm.[156]  So the Nevada Supreme Court's denial of Moore's claim was neither contrary to, nor an unreasonable application of, clearly established federal law and wasn't based on an unreasonable determination of facts.  Moore is not entitled to federal habeas relief for ground 8.

---

[150] *Id.*

[151] *Id.* at 714.

[152] ECF No. 6 at 25.

[153] ECF No. 26 at 26.

[154] *Jackson*, 443 U.S. at 319.

[155] *See* text, supra, at 2–3.

[156] *In re Winship*, 397 U.S. at 364; *Juan H.*, 408 F.3d at 1274; Nev. Rev. Stat. §§ 200.010(1), 200.030(1)(a).

### III.    Certificate of Appealability

The right to appeal from the district court's denial of a federal habeas petition requires a certificate of appealability.  To obtain that certificate, the petitioner must make a "substantial showing of the denial of a constitutional right."[157]  "Where a district court has rejected the constitutional claims on the merits," that showing "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[158]  Because I have rejected Moore's constitutional claims on their merits, and he hasn't shown that this assessment of these claims is debatable or wrong, I find that a certificate of appealability is unwarranted for this case and I decline to issue one.

### Conclusion

IT IS THEREFORE ORDERED that the petition **[ECF No. 6] is DENIED**, and because reasonable jurists would not find my decision to deny this petition to be debatable or wrong, a **certificate of appealability is DENIED**.

The Clerk of Court is directed to substitute William Hutchings for Respondent Jerry Howell, ENTER JUDGMENT accordingly, and CLOSE THIS CASE.

Dated: October 18, 2021

_____
U.S. District Judge Jennifer A. Dorsey

---

[157] 28 U.S.C. § 2253(c).

[158] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).